In re Petition for Naturalization of Edward Julius WENDT.

Petition No. 451214.

United States District Court
N. D. Illinois, E. D.
June 18, 1969.

Lambert M. Ochsenschlager, Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., for petitioner.

Harold W. Calhoun, Designated Naturalization Examiner, Dept. of Justice, I.N.S., Chicago, Ill., for Justice Dept.

## MEMORANDUM AND ORDER

ROBSON, District Judge.

This petition for naturalization was filed on January 23, 1967, and, after several preliminary examinations, the Designated Naturalization Examiner on November 25, 1968, filed his recommendation that the petition be denied. The parties have stipulated to the relevant facts and have submitted briefs in support of their respective positions. After a brief oral argument, this court took the matter under advisement on the briefs and stipulation. After careful consideration, this court is of the opinion that the petition should be granted.

The petitioner, Edward Julius Wendt, is presently a national of Chile. He came to the United States sometime before 1928, and was accepted for permanent residence on September 28, 1928. In 1942, at the age of 40, he was classified as acceptable for service in the United States Army. Eight days after this notice of acceptability was sent to the petitioner, he applied on October 10, 1942, for relief from service in the armed forces on the ground that he was a national of a neutral foreign country. DSS Form 301. On this form appeared the following words:

"I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States. * * *"

His local board, as a result of this request for the alien exemption, classified him IV-C on October 15, 1942. On August 5,

1943, he was reclassified into class IV-C (H), which meant that he was over the age for induction at that time. Eleven days later, the petitioner asked that he be able to withdraw his application for exemption on the ground of alienage. Since he was over age, special permission would have had to have been granted. On October 7, 1943, he was refused permission to withdraw his application for exemption and the Director of Selective Service declined to waive his age.

■ On January 23, 1967, the petitioner filed the present petition. 8 U.S. C. § 1445. He was then 64 years of age. In this petition, he stated:

"I signed Form No. 301 while I was in a very mixed up and confused state of mind. I did not realize the full importance of this action until several months later, when I filed a formal petition with the Selective Service Board, Aurora, Illinois—begging said Board to permit me to withdraw Form 301, and for the Board to reclassify me for any service whatsoever, or wherever my services could be used."

The Designated Naturalization Examiner recommended on November 25, 1968, that this petition be denied. This court, however, does not have to follow this recommendation. E. g., 8 U.S.C. §§ 1446, 1447.

Prior to 1952, the statutory bar to citizenship flowed from the mere making of the application. Cf. Ceballos v. Shaughnessy, 352 U.S. 599, 606, 77 S.Ct. 545, 1 L.Ed.2d 583 (1957). However, as to petitions filed after 1952, such as the present one, a "two-pronged test" was added by Section 315 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1426, and was held to be retroactive to exemptions granted prior to 1952. Cf. Lehmann v. United States ex rel. Carson, 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122 (1957); United States v. Hoellger, 273 F.2d 760 (2nd Cir. 1960); Petition for Naturalization of Mirzoeff, 196 F.Supp. 230 (S.D.N.Y.1961). This section not only requires that the alien apply for the exemption, as the petitioner undoubtedly did here, but also that he "is or was re-

lieved or discharged from such training. or service on such ground [of alienage]." If these two tests are satisfied, then the alien is "permanently ineligible to become a citizen of the United States." 8 U.S.C. § 1426(a).

Several cases have held that, even though an alien applied for the exemption and, at the time he applied, was "effectively relieved" from service on the ground of alienage, if he actually served in the armed forces, he could still become a citizen. E.g. United States v. Hoellger, supra, 273 F.2d at 762. Some cases have even held that if the local board reclassified the alien I-A, and the alien either was not inducted though physically acceptable, or not inducted because physically unacceptable, that the bar to citizenship does not apply since the alien was not effectively relieved of service "on such ground" of alienage. United States v. Bazan, 97 U.S.App.D.C. 108, 228 F.2d 455 (1955); In Matter of Petition for Naturalization of Fabbri, 254 F.Supp. 858 (E.D.Mich.1966); Petition of Caputo, 118 F.Supp. 870 (E.D.N.Y.1954). Still other cases have held that an attempted withdrawal of the claim of exemption, or a reclassification of the alien by the local board does not remove the permanent bar to citizenship, short of actual induction and service. Lapenieks v. Immigration and Naturalization Service, 389 F.2d 343 (9th Cir. 1968); Gilligan v. Barton, 265 F.2d 904 (8th Cir. 1959); Petition for Naturalization of Bergman, 173 F.Supp. 880 (D.Minn.1959).

The petitioner argues that he was not effectively relieved from service on the ground of alienage because he allegedly would not have been called for service even had he been classified I-A. It is undisputed that when the President on December 5, 1942, restricted the liability for induction to those between the ages of 18 through 37, the petitioner was 40 years of age, and was, therefore, no longer liable for induction as of that date. The petitioner also contends that from the time he signed the form (October 10, 1942) and received the IV-C classification (October 15, 1942), to the time that the

President redefined the eligibility requirements, a period of about two months, his local board in Aurora, Illinois, was not drafting men over 38, even though the law allowed them to do so. He then asserts from these facts that even though he received a IV-C, he was effectively relieved of military service by virtue of the administrative policy of his local board, and not because of his IV-C alien exemption status.

■ It should be noted first of all that, although the petitioner indicated that he was "mixed up and confused" when he signed the claim for exemption, there is no serious contention that he did not understand the nature of what he was signing. Moser v. United States, 341 U.S. 41, 46–47, 71 S.Ct. 553, 95 L.Ed. 729 (1951). He read, wrote and understood English as early as 1928, when he entered this country, and cannot now be heard to claim that in 1942 his difficulties with the English language caused a misunderstanding. *Cf.* Petition for Naturalization of Meng Chung Yang, 171 F.Supp. 898 (D.D.C.1959), with Petition for Naturalization of Bergman, *supra.* The language in the forms at that time was unmistakably clear: If an alien simply made the application, he lost the possibility of becoming a citizen of the United States. Although, as discussed above, such a result does not now flow from the mere making of the application, one of the two parts of the test in Section 315 still demands an intelligent waiver of the right to apply for citizenship. 8 U.S.C. § 1426(a). The petitioner here has made such an intelligent choice.

■ The petitioner places much reliance on the *Bazan* and *Fabbri* cases, *supra,* to support his claim that under the tests in Section 315, he was not effectively relieved from military service on the ground of alienage. The *Fabbri* case, *supra,* is, however, factually distinguishable. The local board there "nullified" Fabbri's IV-C classification, gave him a physical examination, and later classified him IV-F, unfit for military service. There is no such action by the present petitioner's local board. *Cf.* Lapenieks v. Immigration and Naturalization Service, *supra;* Gilligan v. Barton, *supra.* Wendt began in Class I, went to Class I-A, signed the form, was classified IV-C until he was administratively determined to be over age, was then classified IV-C(H), and then finally IV-A. At no time was the petitioner classified I-A (available for induction) after he signed the form.

In the *Bazan* case, *supra,* 228 F.2d at 456, the government admitted that the "examiner's legal conclusion that [petitioner] was relieved from 'military service because of alienage' is not supported by any evidence in the present record." The Court of Appeals did not therefore consider the District Court's reason for granting the petition for citizenship, *i. e.,* that the petitioner had the right to change his mind under the doctrine of *locus poenitentiae.* While the government in the present case has not made such an admission, this court cannot find any evidence in this record to support the conclusion that the petitioner was effectively relieved from service on the ground of alienage. The government does not challenge the testimony of Mr. Fred Walz, a member of petitioner's draft board in 1942, that Mr. Wendt would not have been called because of his age, even had he been classified I-A. He was thus *effectively* relieved of service in the armed forces because of the policy of his local board, and not because he signed the alien exemption form.

Shortly after Wendt filed his exemption form, the President made the petitioner's local board's policy the policy for the entire nation. The government does not argue that had Wendt filed his exemption form after this presidential decision, that he would now be barred from citizenship. This court cannot see any real distinction between that situation and the present situation. The government is asking this court to deny the benefits of citizenship to a man who has lived an exemplary life in his community, has faithfully paid his taxes to the government, and has not been in the least a burden to this country. The government

makes this request on the basis of an unnecessary act performed 27 years ago. The petitioner is now 67 years of age. He has been a responsible executive in a large corporation in Aurora, Illinois, for over two decades. The government has shown this court no other reason why this petitioner should be denied citizenship. Accordingly, this court can see no useful purpose served by a denial of this petition, and, because the petitioner was not effectively relieved of military service on the ground of alienage, is of the opinion that the petition should be granted.

It is therefore ordered that the Petition for Naturalization of Edward Julius Wendt be, and it is hereby granted.